## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

DAVID MORSEMAN,

                          Plaintiff,

      -vs-

STEUBEN COUNTY, JOHN
RICCIARDELLI, M.D., and JOHN
DOES,

                    Defendants.

**REPORT and RECOMMENDATION**

23-CV-6602-FPG-MJP

## INTRODUCTION

**Pedersen, M.J.** Plaintiff David Morseman moved for leave to amend the complaint pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) to add Scotlynne Rieder ("Rieder") as a defendant.[1] (Notice of Motion at 1–2, Apr. 4, 2025, ECF No. 39.) The undersigned reports and recommends that the District Judge **DENY** Plaintiff's motion to amend (ECF No. 39).

## BACKGROUND

Plaintiff filed his initial complaint on October 18, 2023 (ECF No. 1). His proposed first amended complaint (Davenport Decl. Exs. GG (redlined version) & HH (clean version) ("Complaint"), April 4, 2025, ECF Nos. 39-2 & 39-3) asserts the following: While housed at the Steuben County Jail, he began to feel seriously ill and

---

[1] With his present motion, Plaintiff also seeks an order "enforcing a subpoena issued to Dr. Elliot Wagner [and] [ ] awarding reasonable attorneys' fees and expenses incurred in bringing this motion and related to enforcement of this subpoena" (Notice of Motion, ECF No. 39.) However, Plaintiff withdrew this portion of his motion. (Notice of Motion, ECF No. 46.) The motion also seeks to compel and other relief not addressed in this Report.

Further, Defendants Steuben County and John Ricciardelli, M.D. do not take a position on the motion to amend. (Fitch Decl. ¶ 2, May 9, 2025, ECF No. 53; Crain Decl. ¶ 3, May 9, 2025, ECF No. 54.)

Rieder, a member of the medical staff at the jail, ordered a chest x-ray. (Compl. ¶ 3.) The resulting July 24, 2020, x-ray revealed "'infiltrates,' or abnormal substances in his lungs." (*Id.* ¶ 3.) Rieder informed Plaintiff that the infiltrates likely indicated he had cancer, but that the facility did not have the means to treat him. (*Id.*) Plaintiff was subsequently transferred to Elmira Correctional Facility. (*Id.* ¶ 4.) "Rieder later authored the State Medical Transfer Report dated April 16, 2021, which failed to disclose Plaintiff's history of abnormal lung imaging to Elmira Correctional Facility when Plaintiff was transferred there, despite a specific section in the transfer report requesting such information." (*Id.* ¶ 12.)

Upon arrival at Elmira Correctional Facility, Plaintiff underwent an intake process, including a chest x-ray. (*Id.* ¶ 4.) There, Dr. Ricciardelli reviewed the x-ray and "opined [that] it showed infiltrates in Plaintiff's lungs." (*Id.*) Dr. Ricciardelli did not order follow-up diagnostic testing "due to the failure of Defendant Rieder to include Plaintiff's prior abnormal chest x-ray from Steuben County Jail in his transfer report." (*Id.*) Once released, Plaintiff sought treatment from his primary care doctor, who confirmed Plaintiff had lung cancer and sent him for treatment. (*Id.* ¶ 5.)

In a supporting attorney declaration, Chad A. Davenport, Esq., asks for leave to "substitute previously unidentified 'John Doe(s)' with Scotlynne Reider based on evidence obtained through discovery and deposition testimony confirming her personal involvement in Plaintiff's medical care at the Steuben County Jail." (Davenport Decl. ¶ 45, ECF No. 39-1.) He states that Steuben County only provided records showing Reider's participation in Plaintiff's care in November 2024. Plaintiff

deposed Reider on April 4, 2025, "and confirmed her personal involvement and role that subject her to individual liability in this matter." (*Id*. ¶ 46.)

In a declaration filed in opposition to Plaintiff's motion to amend, Paul A. Sanders, Esq., argues that the Court should deny leave to amend because the proposed amendments are futile and Plaintiff is seeking it "after the expiration of the statute of limitations." (Sanders Decl. ¶¶ 8 & 9, May 9, 2025, ECF No. 50.) In a memorandum of law opposing the proposed amendment, Reider argues that Plaintiff has not met the requirements for pleading a *prima facie* case against Reider for deliberate indifference under the Eighth Amendment.

With regard to timing, the Court entered a scheduling order on March 22, 2024, setting the deadline for motions to amend or join other parties at May 3, 2024. Two subsequent amended scheduling orders did not change that date. On May 3, 2024, the parties entered a stipulation purporting to extend the date by which to add parties and amend the pleadings to July 2, 2024. (Stipulation at 1, ECF No. 22.) The Court declined to "so order" the stipulation. (Text Order Denying the parties' stipulation to extend the deadline to amend the complaint and join parties, May 6, 2024, ECF No. 23; *see also* Text Order, Oct. 15, 2024, ECF No. 26.)

## JURISDICTION

This matter was assigned to the Honorable Frank P. Geraci and referred by him to me on January 26, 2024, for all pretrial matters excluding dispositive motions. (TEXT ORDER REFERRING CASE, ECF No. 16.) A district judge may refer non-dispositive motions to a magistrate judge for decision. 28 U.S.C. § 636(b)(1)(A); Fed.

R. Civ. P. 72; *Marcella v. Capital Dist. Physicians' Health Plan, Inc.,* 293 F.3d 42, 46 (2d Cir. 2002). Denial of a motion to amend on futility grounds is reviewed by the district judge *de novo. See Briggs v. County of Monroe*, 215 F. Supp. 3d 213 (W.D.N.Y. 2016).

## LEGAL STANDARDS

### *Fed. R. Civ. P. 15(a)(2)*

Under Federal Rule of Civil Procedure 15(a)(2), a court must exercise its discretion to grant or deny a motion to amend "consonant with the liberalizing spirit of the Federal Rules." *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.,* 889 F.2d 1248, 1254 (2d Cir. 1989) (citation omitted) (reversing denial of motion to amend). Permission to amend "should be freely granted." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Under Fed. R. Civ. P. 15(a)(2), the Court retains discretion to deny the motion "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The "non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *In re ROW NYC, LLC*, No. 23-10015 (JLG), 2024 WL 2807950, at *5 (Bankr. S.D.N.Y. May 31, 2024) (citation omitted).

"Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits." *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 346 (W.D.N.Y. 2009).

### *Statute of Limitations*

A motion to amend that is made after the expiration of the statute of limitations must be denied unless the amendment relates back to the date the original complaint was filed. *Slayton v. American Exp. Co.*, 460 F.3d 215 (2d Cir. 2006). Federal Rule of Civil Procedure 15 sets the standard for relation back:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

### *Fed. R. Civ. P. 16(b)(4)*

Under Federal Rule of Civil Procedure 16(b)(4), the Court's scheduling order shall not be modified except upon a showing of good cause. *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009). Good cause "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). In other words, the movant must show that, "despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Perfect Pearl Co. v. Majestic*

*Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quotation omitted). The party asking for a deadline extension bears the applicable burden: "The burden of showing diligence rests on the moving party." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (citing *Parker*, 204 F.3d at 340).

### Standard for a Civil Rights claim for deliberate indifference to a serious medical need

"The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment." *Jones v. Westchester Cnty. Dep't of Corrs. Med. Dep't*, 557 F. Supp. 2d 408, 413 (S.D.N.Y 2008).  In order to successfully state an Eighth Amendment claim for medical indifference, a plaintiff must prove that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). This analysis contains an objective and a subjective component. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The objective component requires that a plaintiff's medical condition be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Lawrence v. Evans*, 136 F. Supp. 3d 486, 489 (W.D.N.Y. 2015) ("An objectively 'serious medical need' is one which presents 'a condition of urgency' that may result in 'death,

degeneration, or extreme pain.'") (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)), *aff'd*, 669 F. App'x 27 (2d Cir. 2016).

The second component of such a claim is subjective and requires a plaintiff to allege that the defendants were deliberately indifferent to his or her serious medical need. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway*, 37 F.3d at 66. To satisfy this prong, it is necessary that the defendants knew of but disregarded the medical need. *Lawrence*, 136 F. Supp. 3d at 489. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness," *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011), and "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," *Estelle*, 429 U.S. at 106. Further, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment" and "mere disagreement over the proper treatment does not create a constitutional claim." *Hill*, 657 F.3d at 123 (citation omitted). "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." *Id*.

## DISCUSSION

### Does the Scheduling Order Preclude the Motion?

The Court's scheduling order deadline for the filing of an amended complaint or to add additional parties has long since lapsed. Only if that date is extended may I consider the motion. In order to extend the deadline, I must find "good cause" to do so. Good cause includes due diligence. Courts decline to find good cause because of a

lack of diligence if the party "knew, or should have known" steps it needed to take "in advance of the deadline sought to be extended." *Smith v. Bradt*, 329 F.R.D. 500, 505 (W.D.N.Y. 2019).

Plaintiff argues that he could not have known of Rieder's involvement in the situation at the jail until Defendants complied with discovery revealing her name, which did not occur until April 2025 when Plaintiff deposed her to confirm information obtained in November 2024 implying her involvement in Plaintiff's claim of deliberate indifference. Plaintiff contends that Steuben County did not provide Plaintiff's own medical records, "until after it was served with this federal lawsuit and a motion for expedited discovery." (Mem. of Law in Support of Pl.'s Consolidated Mot. To Amend the Compl., to Compel Discovery, and for Contempt at 12, Apr. 4, 2025, ECF No. 39-34 (hereinafter "Pl.'s Mem. of Law").)

Rieder contends that:

> Plaintiff, however, could have requested his own medical records, identifying Rieder, at any time over the last 4 and a half years. Further, Plaintiff made statements regarding his interactions with Rieder in his deposition shortly after his booking into the Steuben County Jail in May of 2020, proving he was aware of her identity.

(Mem. of Law in Support of Scotlynne Rieder's Opp'n to Pl.'s Mot. Seeking Leave to Amend his Compl. at 10, May 9, 2025, ECF No. 51 (hereafter "Rieder's Mem. of Law"); *see also* Def. Steuben Co.'s Mem. of Law in Opp'n to Pl.'s Mot. to Compel Discovery at 4, May 9, 2025, ECF No. 52 (the medical records were always in the custody of a third party and Plaintiff could have obtained them directly from PrimeCare Medical).)

In reply, Plaintiff states that Steuben County witness, Major Sutton, testified that PrimeCare's medical records of inmates are kept at the jail. (Reply Mem. of Law

in Further Support of Pl.'s Consolidated Mot. to Amend the Compl. and to Compel Discovery at 3, May 16, 2025, ECF No. 58-5 (hereinafter "Pl.'s Reply Mem.").) He contends that, "the County's relationship with PrimeCare is precisely the type of arrangement that the Second Circuit has found creates a practical ability to obtain documents. *See Shcherbakovskiy v. Da Capo al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).[2]" (*Id.*) Plaintiff further argues that he provided duly executed HIPAA authorizations to the County in January 2022 to obtain his medical records. (*Id.* at 8; *see also* Davenport Decl. ¶¶ 7–8, ECF No. 39-1.)

Based on the information submitted, I find good cause to extend the deadline for a motion to amend and to add parties under Fed. R. Civ. P. 16(b)(4). Therefore, I reject Rieder's invitation to deny the motion to amend based on the deadline set in the scheduling order.

### Should leave to amend be permitted?
### Undue delay

Plaintiff contends that he did not learn of Rieder's involvement with respect to his claim "until Steuben County [jail] finally provided Plaintiff's medical records in November 2024" and the January 17, 2025, deposition of Dr. Ricciardelli wherein he learned that Ms. Rieder "potentially authored the April 2021 State Medical Transfer Report." (Davenport Decl. ¶ 46, ECF No. 39-1; Pl.'s Mem. of Law at 13, ECF No. 39-34.) Plaintiff then confirmed Ms. Rieder's personal involvement during her April 4, 2025, deposition.  (Davenport Decl. ¶ 46, ECF No. 39-1.) Plaintiff filed the present

---

[2] "[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." *Shcherbakovskiy*, 490 F.3d at 138.

motion to amend on April 4, 2025—the same day as Rieder's deposition. I find under these circumstances that Plaintiff did not engage in undue delay in seeking to amend the complaint. *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016) ("Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate.")

Rieder does not address this element in her opposition and, therefore, has not demonstrated any undue delay.

### *Bad faith*

The burden is on the defendant to establish the motion was filed in bad faith. *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020).  If the amendment is seen as merely a tactic or as part of some legal gamesmanship, bad faith will preclude leave to amend. *See, e.g., Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1060 (N.D. Cal. 2015) (finding bad faith where "Plaintiff timed her motion to amend so that she could have the benefit of previewing Defendants' motion to compel arbitration before deciding whether to abandon the federal case in favor of the parallel state case"), *aff'd* 677 F. App'x 359 (9th Cir. 2017); *Oneida Indian Nation v. Cnty. of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000) ("A finding that a party is seeking leave to amend solely to gain a tactical advantage, also supports a finding that such an amendment is made in bad faith").

Plaintiff asserts that he does not seek this amendment in bad faith as evidenced by his consistent and transparent disclosure of the basis for this amendment "in good-faith communications, discovery conferences, and in the instant motion." (Pl.'s Mem. of Law at 18, ECF No. 39-34.) Plaintiff contends that "[t]he proposed amendments are based on verified evidence and sworn testimony, not speculation." (*Id.*) Plaintiff also provided a copy of the present motion to Defendants prior to filing it in an attempt to resolve the present issues without court intervention. (*Id.* at 18–19.)

The record does not reflect that Plaintiff filed this motion as merely a tactic or form of legal gamesmanship. Moreover, Rieder did not address this factor in her opposition and, therefore, has not demonstrated bad faith.

### *Undue Prejudice*

"Prejudice to the opposing party ... has been described as the most important reason for denying a motion to amend." *Frenkel v. N.Y.C. Off-Track Betting Corp.*, 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (quoting *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)). As with bad faith, the burden of establishing that the amendment would be unduly prejudicial lies with Defendants as the non-moving party. *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 382 (S.D.N.Y. 2022). Courts consider the procedural posture of a case in assessing whether undue prejudice exists; they also evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from

bringing a timely action in another jurisdiction." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000)); *see also Blagman v. Apple, Inc.*, 307 F.R.D. 107, 115 (S.D.N.Y. 2015) ("[P]rejudice may arise when a proposed amendment opens the door to substantial expenditures of time and money.").

Plaintiff contends that Rieder cannot assert prejudice because the "proposed amendments do not expand the scope of discovery or introduce new legal theories" but rather substitute Rieder for the "John Doe" placeholders based on the same claims and underlying facts. (Pl.'s Mem. of Law at 18, ECF No. 39-34.) Plaintiff asserts that there is no risk of surprise or prejudice because Rieder has been deposed in this litigation. (*Id.*) Further, Plaintiff argues that no prejudice exists because there is no trial date, dispositive motions have not yet been filed, and the parties are still in the process of developing the record. (*Id.*)

Rieder does not address this element in her opposition and, therefore, has not demonstrated prejudice.

### *Futility*

"Proposed amendments are futile, and thus must be denied, if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (internal quotation marks and citation omitted). Accordingly, the court must determine whether a proposed amendment has "facial plausibility," meaning that it pleads "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "[A] court must accept as true all of the allegations contained in a [proposed amended] complaint, but that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).

> Plaintiff asserts that the proposed amendment is not futile because the
>
> claims are grounded in well-established constitutional standards under the Eighth and Fourteenth Amendments, which prohibit deliberate indifference to serious medical needs. The proposed claim against Rieder is well-pleaded and supported by factual allegations that satisfy the standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

(Pl.'s Mem. of Law at 15, ECF No. 39-34.)

Further, Plaintiff contends that Rieder was acting under color of state law for purposes of § 1983 because she "performed public functions on behalf of the County under a direct contractual agreement with Steuben County through PrimeCare [and that] [i]t is undisputed that PrimeCare Medical was under contract with Steuben County to fulfill the County's constitutional duty to provide adequate medical care to persons in its custody." (*Id.* at 16–17.) Plaintiff further contends that Rieder "directly participated in Plaintiff's treatment, including by preparing the April 2021 State Medical Transfer Report, which omitted critical diagnostic history that Dr. Ricciardelli later testified directly influenced his decisions and delayed Plaintiff's cancer diagnosis (*see* Ex. Z at 94–99.)." (*Id.* at 17.) More specifically, Plaintiff contends that Rieder failed to attach the July 2020 x-ray to the State Medical Transfer Report.

(Davenport Decl. ¶ 48, ECF No. 39-1.) Plaintiff also asserts that Rieder failed to attach the x-ray report to the State Medical Transport Report. (Pl.'s Reply Mem. of Law at 13.)

Rieder's principal argument is that the proposed amendments are futile. (Sanders Decl. ¶ 9, ECF No. 50.) As previously indicated, to be successful on a claim for deliberate indifference to serious medical needs, Plaintiff must first demonstrate that his medical condition was objectively serious. Rieder asserts that Plaintiff "does not allege an objective serious medical need that amounts to a condition of urgency that may produce death, degeneration or extreme pain, as required to state a claim." (Rieder's Mem. of Law at 5, ECF No. 51.) Rieder contends that Elliott Wagner, M.D. interpreted Plaintiff's initial chest x-ray taken at Steuben County Jail on July 24, 2020, and found that "[t]here is no infiltrate, effusion, or mass." (Rieder's Mem. of Law at 6, ECF No. 51 & Sander Decl. Ex. E, ECF No. 50-5.) Dr. Wagner's impression was "1. Normal chest x-ray." (*Id.*) Rieder contends that this report "establishes the absence of a serious medical need as a matter of law." (Rieder's Mem. of Law at 6.)

Further, Rieder contends that Plaintiff "misrepresents the normal x-ray report by alleging Rieder did not properly complete the State Transfer Form by failing [to attach] the abnormal report." (*Id.* at 6.)  Rieder asserts that "[t]he omission of a normal chest x-ray report [from the] State Transfer Form could not have, as a matter of law, resulted in Dr. Riciardelli [sic] failing to treat Plaintiff for lung cancer." (*Id.* at 7.)

With respect to the second prong—subjective deliberate indifference to a serious medical need—Rieder contends that "Plaintiff has not and cannot allege specific facts or personal involvement regarding the purported failure to treat abnormal chest x-ray findings because the x-ray was normal." (*Id.* at 7.) Further, Rieder asserts that she was not required to include the July 2020 chest x-ray with the State Medical Transfer Form. (*Id.*)

With respect to the first prong, the undersigned is at a loss for why Plaintiff refers to the initial chest x-ray taken in July 2020 as "abnormal." The x-ray report clearly states that there was no infiltrate, effusion, or mass and Dr. Wagner's impression was that it was a "normal" x-ray.[3] If Plaintiff refers to the x-ray as "abnormal" based on his interpretation of Dr. Ricciardelli's testimony wherein the doctor reviewed photocopies or printouts of the July 2020 x-rays (apparently there were two taken in July 2020, marked as Exhibits 3 and 4 during Dr. Ricciardelli's

---

[3] Plaintiff references medical records from the Steuben County Jail in his proposed amended complaint (Davenport Dec. Exs. GG (redlined version) & HH (clean version) ¶ 3, ECF Nos. 39-32 & 39-33 ("Defendant Scotlynne Rieder, part of the medical staff at Steuben County Jail, ordered a chest x-ray for Plaintiff, and discovered "infiltrates," or abnormal substances in his lungs.")) and he attached them to the present motion, including Dr. Wagner's x-ray report (*Id.* Ex. B-2 at page 157 (the medical records are not consecutively numbered by page. The report appears on the 157th page of the medical records)). Further, in Plaintiff's reply in support of this motion he asserts that the State Medical Transport Report "explicitly required the inclusion of any recent <u>*chest*</u> x-ray *report*." (Pl.'s Reply Mem. of Law at 13, first emphasis in original, second emphasis added.) Plaintiff appears to be relying on the chest x-ray *report* in support of his motion to amend. Accordingly, I find that the Court can consider it. Indeed, "[i]n deciding a motion to dismiss or a motion to amend, the Court may consider, in addition to the complaint, documents that plaintiff attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken." *White v. Anchor House, Inc.*, No. 11 Civ. 3232 (NGG) (LB), 2011 WL 5402162, at *1 (E.D.N.Y. Nov. 3, 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *accord United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

deposition) such an interpretation is misleading. Dr. Ricciardelli testified that the x-ray labeled as Exhibit 3 was "very difficult to interpret" because it was "an under-penetrated film." (Sanders Decl. Ex. B ("Ricciardelli Tr.") 37:2–14, ECF No. 50-2.) Further, Plaintiff's counsel pointed out what he interpreted as "some indications of white, where it's a little bit paler in the lungs" on Exhibit 3 and asked Dr. Ricciardelli what could cause that and he again testified that "it's difficult because it seems to be under-penetrated" and the "indications of white" could result from "a number of different causes." (*Id.* 40:18–41:4.) Plaintiff then asked "[w]ould filtrates . . . be shown in white on a chest x-ray?" to which Dr. Ricciardelli responded "Yes." (*Id.* 41:9–13.)[4] Dr. Ricciardelli did not testify that what Plaintiff interpreted as "indications of white" on the x-ray were infiltrates. During his deposition, Dr. Ricciardelli did not review the actual x-ray films. During his deposition, Dr. Ricciardelli did not review Dr. Wagner's x-ray report wherein he found no infiltrates, effusions, or masses and found the chest x-ray to be "normal."

Moreover, it is not entirely clear whether Plaintiff is asserting that Rieder failed to attach the actual x-ray from July 24, 2020, or if he is alleging that she failed to attach the x-ray report authored by Dr. Wagner. In his declaration, Plaintiff's counsel indicates that "the State Medical Transfer Report, dated April 16, 2021,

---

[4] Plaintiff relies on Dr. Ricciardelli's testimony in the proposed first amended complaint and, therefore, has incorporated it by reference. (Compl. ¶ 25.); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). Accordingly, the Court can consider Dr. Ricciardelli's deposition testimony when deciding this motion.

authored by Scotlynne Rieder . . . failed to disclose any history of prior abnormal imaging (or any lung x-rays for the matter, despite the specific section in the transfer report requesting such information), including the July 24, 2020 x-ray." (Davenport Decl. ¶ 48, ECF No. 39-1.) In his reply, however, Plaintiff contends as follows:

> Rieder's defense is premised on her claim that the 2020 x-ray was "normal" and that she was not required to disclose it in the transfer report. (*See* Dkt. No. 51, at p. 2). However, her attempt to rely on a minor typographical ambiguity in the form ("Check X-ray" instead of "Chest X-ray") is directly contradicted by the clear language of the report itself, which explicitly required the inclusion of any recent <u>*chest*</u> x-ray **report**.

(Pl.'s Reply Mem. of Law at 13, first emphasis in original, second emphasis added). Plaintiff imbedded a portion of the State Medical Transport Report in his reply memorandum of law. (*Id.*) In reviewing the portion of the report provided, it does not appear that there was any requirement to attach the actual x-ray from July 2020.[5] Even if the undersigned accepted as true that there was a typo in the report such that it should have read "Chest X-ray" rather than "Check X-ray," the portion of the report appears under a section titled "Lab Test (if Applicable) Date Done and Results." (*Id.*) That section does not indicate that any x-ray should be attached.

Further, Plaintiff's reliance on the lower section of the report to require attaching the x-ray is similarly unavailing. The section is titled "Tuberculin Testing" and at the very bottom of that section the report provides "**Attach recent x-ray report** **if available**." (*Id.*, emphasis added.) In other words, on its face the portion of

---

[5] Plaintiff refers to the State Medical Transfer Report in his proposed first amended complaint. (Compl. ¶¶ 4, 12, 23, 29, 35.) Accordingly, the Court can consider it in connection with the present motion. *Yak*, 252 F.3d at 130.

the State Medical Transfer Report provided by Plaintiff in his own papers does not require the person completing the report to attach any recent x-ray films. At the very most, that portion requires the person completing the report to attach a chest x-ray *report*. It is not clear to me whether the direction to attach a recent x-ray report applies to just the Tuberculin Testing or if it also applies to the section titled "Lab Test." But this makes no difference. Either way, the portion of the report provided to me only requires attaching a recent chest x-ray *report*. To the best of my knowledge, the only x-ray report that could have been attached to the State Medical Transport Report was the one completed by Dr. Wagner who found that the chest x-ray was normal.[6] This conclusion renders Plaintiff's argument unavailing that Rieder's alleged failure to include the July 2020 x-ray report directly influenced and delayed Plaintiff's cancer diagnosis and treatment. In considering the foregoing, I find that Plaintiff has failed to demonstrate an objective serious medical need that amounted to a condition of urgency that could produce death, degeneration or extreme pain, as required to state a claim.

---

[6] Further, in reviewing Dr. Ricciardelli's testimony it appears that he would not have reviewed the actual x-ray if he had it. Specifically, he testified as follows:

> Q. Okay. So would that have been part of your process had you known that there was an X-ray that was done at Steuben County if there was another one being done in April of 2021, would you have looked at the prior chest X-ray as well?
> . . .
>
> A. I don't know if I would have looked at the actual X-ray, but I would have looked at the report of the X-ray.

(Davenport Decl. Ex. Z (Ricciardelli Tr.) 97:5–14.)

As for the second prong, even if there was evidence that Plaintiff had an objectively serious medical need, Plaintiff has not satisfied the subjective component because his allegations do not support the conclusion that Rieder acted with a sufficiently culpable state of mind. Again, the chest x-ray was normal according to Dr. Wagner. The undersigned agrees with Rieder that even if she was required to attach the July 2020 x-ray *report* to the State Medical Transfer Report, failing to do so would not have impacted Plaintiff's later treatment because the x-ray report stated that the x-ray was normal. There is no evidence whatsoever that Rieder knew of but disregarded any serious medical need.

Based on the foregoing, the undersigned reports and recommends that the District Judge deny Plaintiff's motion to amend on the basis of futility.[7]

### *Rieder is entitled to costs and attorney's fees*

Rieder seeks attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54[8] and 42 U.S.C. § 1988. For the purposes of 42 U.S.C. § 1988, a "prevailing party" can be defined as one who obtains "actual relief on the merits" that "alters the legal relationship between the parties by modifying [a party's] behavior in a way that directly benefits [the opposing party.]" *Farrar v. Hobby*, 506 U.S. 103, 103 (1992). Further, "[p]recedent teaches that 'actual relief on the merits' can be something less than a favorable final judgement following a full trial on the merits."

---

[7] I do not address whether the proposed amendments would relate back to the date of the original pleading because I find that the proposed amendments are futile.

[8] Rieder's claim for attorney's fees fails under Rule 54 as she did not "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2)(B)(iii).

*Dimartile v. Hochul*, 80 F.4th 443, 451 (2d Cir. 2023) (citation omitted). The Second Circuit also noted that "[a] party who 'secure[s] a judgment on the merits or a court-ordered consent decree' is a 'prevailing party'; but a 'voluntary change in the [other party's] conduct' is not enough." *Opoku v. County of Suffolk*, 123 F. Supp. 3d 404, 411 (E.D.N.Y. 2015) (quoting *Carter v. Inc. Vill. Of Ocean Beach*, 759 F. 3d 159, 163 (2d Cir. 2014). Here, non-party Rieder prevails in that Plaintiff will not be able to add her as a defendant in this case, altering the legal relationship between the parties in a way that benefits Rieder.

The Second Circuit has discussed the congressional purpose of fee-shifting statutes such as § 1988. *Carter*, 759 F.3d at 163. *Carter* noted that whether or not a party should be awarded fees is partially determined by whether they are a plaintiff or a defendant. *Id*. Of note, although non-party Rieder is not technically a defendant in this case, functionally she is a defendant for the purpose of defending against Plaintiff's motion to amend.

In *Carter*, the Second Circuit held that "under fee-shifting statutes such as § 1988, a prevailing *plaintiff* ordinarily is to be awarded attorney's fees . . . . By contrast, a district court may in its discretion award attorney's fees to a prevailing *defendant* only upon a finding that the plaintiff's action was *frivolous, unreasonable, or without foundation*, even though not [necessarily] brought in subjective bad faith." *Id*. (internal quotation marks and citation omitted).

Based on my analysis of Plaintiff's proposed amendments, above, and my finding that it would be futile to permit the proposed amendments, I find that

Plaintiff's motion was frivolous, unreasonable, and without foundation. I therefore report and recommend that the District Judge find that Rieder is entitled to her costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## CONCLUSION

Based on the foregoing, I report and recommend that the District Judge **DENY** Plaintiff's motion to amend (ECF No. 39). I further report and recommend that the District Judge **GRANT** Rieder's request for costs, including reasonable attorney's fees.

Pursuant to 28 U.S.C. § 636(b)(1), the Court hereby

**ORDERS**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS**[9] to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's</u>**

---

[9] **NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**: The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Geraci.

**Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:     August 4, 2025
           Rochester, New York

           MARK W. PEDERSEN
           United States Magistrate Judge